Derek Milosavljevic (admitted *pro hac vice*)
dmilosavljevic@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Alexis A. Plunkett, Nevada Bar No. 11245
alexis@plunkettfirm.com
LAW OFFICE OF ALEXIS PLUNKETT
2657 Windmill Parkway #613
Henderson, Nevada, 89074
Telephone: (702) 675-4613
Facsimile: (702) 446-8215

Attorneys for Plaintiff Anthony Thomas Chernetsky

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Anthony Thomas Chernetsky,<br><br>                    Plaintiff,<br><br>    v.<br><br>State of Nevada, et al.,<br><br>                    Defendants. | CASE NO. 3:06-cv-00252-RCJ-WGC<br><br>**REPLY MEMORANDUM**<br>**IN SUPPORT OF PLAINTIFF'S**<br>**MOTION FOR CIVIL CONTEMPT** |

The State does not deny its failure to comply with this Court's orders for more than a year. Nor does it claim any real confusion about what the orders require. Indeed, it acknowledges that the orders "allow Chernetsky to obtain the materials to build his own sweat lodge and thereafter allow him to engage in sweats." Defendants' Opposition to Plaintiff's Motion for Civil Contempt ("Opp'n")

at 3–4. Having submitted no declarations or other evidence to rebut Mr. Chernetsky's evidence, the State attempts to excuse its noncompliance and failure to request a stay by claiming that it assumed that Mr. Chernetsky would not seek enforcement of the Court's rulings and judgment, which it repeatedly mischaracterizes as not being "final" orders. Further, much of the State's brief is spent rehashing its previously unsuccessful arguments and criticizing the Court's prior rulings. But this forbidden collateral attack ignores the well-settled rule that the correctness of an order is not at issue in a contempt proceeding, only compliance with it. *See Walker v. City of Birmingham*, 388 U.S. 307 (1967).

In fact, the State has put forth no viable defense to this contempt motion. As the Supreme Court has stated, a court's order must be obeyed whether one agrees with it or not; it is enforceable from the moment entered unless timely stayed; and good faith is no defense to civil contempt. *See Maness v. Meyers*, 419 U.S. 449 (1975). Here, the State failed to move for a stay, and instead unilaterally imposed its own; it failed to seek clarification of the order, belying any vagueness arguments; and it has now has failed to rebut Mr. Chernetsky's evidence of noncompliance or to offer any evidence demonstrating an inability to comply.

The State has violated this Court's orders, placing it in contempt. Because no material facts are in dispute, this Court can and should enter a finding of contempt on the papers.

I.   **BECAUSE THE STATE HAS FAILED TO CARRY ITS BURDEN, THIS COURT SHOULD FIND THE STATE IN CONTEMPT ON THE PAPERS**

   A.   **The State Does Not Dispute That It Has Not Provided Mr. Chernetsky With Sweat Lodge Access, And It Has Not Demonstrated An Inability to Comply**

On a motion for civil contempt, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004). A party violates an order if it "fails to take all the reasonable steps within [its] power to insure compliance with the order." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47 (9th Cir. 1983) (internal quotation marks omitted).

This Court's orders of March 7, 2014 and September 16, 2014, (Dkt. Nos. 161, 162, & 173, (the "Orders")), were clear and definite: they required the State to provide Mr. Chernetsky with sweat lodge access on terms similar to those provided to Native American inmates. *See* Dkt. No. 161 at 3; Dkt. No. 173 at 2 (The State "shall" provide equal sweat lodge access and "cannot deny sweat lodge use to one religious group . . . when Defendants are already bearing these same burdens for the benefit of another religious group."). Indeed, the State acknowledges that the Court's Orders "allow Chernetsky to obtain the materials to build his own sweat lodge and thereafter allow him to engage in sweats." Opp'n at 3–4. Mr. Chernetsky submitted evidence to the Court demonstrating that subsequent to judgment he has sought and been denied access to a sweat lodge on any terms. *See* Dkt. No 198-2,

3

Declaration of Derek Milosavljevic in Support of Plaintiff's Motion for Civil Contempt ("Milosavljevic Decl.") ¶¶ 6–9, 11–14 & Exhs. B & D. The State does not deny the authenticity of Mr. Chernetsky's evidence, nor does it even dispute that it has refused to provide Mr. Chernetsky with sweat lodge access. Thus, Mr. Chernetsky has carried his burden of showing by clear and convincing evidence that the State has violated this Court's Orders. *See, e.g.*, *Singh v. Holder*, 395 F. App'x 358, 359 (9th Cir. 2010) (unrebutted evidence compelled finding clear and convincing evidence standard had been met, even under deferential standard of review).

     Once this showing has been made, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). "Failure to comply consists of not taking all the reasonable steps within one's power to insure compliance with the order." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir. 1989) (internal quotations, citation, and alterations omitted). Here, the State has submitted no sworn declarations nor offered any documentary evidence that it has taken *any* steps to comply with the Court's Orders, nor that is "unable" to comply. Instead, the State offers only unsupported attorney argument and hypothetical questions in its effort to demonstrate that the Orders "require[] further facts before [they] can be complied with." Opp'n at 23. For several reasons, the State's efforts fail.

*First*, the State's bullet-point questions which it argues "Render the Subject Orders Incomplete," (Opp'n at 9) do no such thing. Answers to the State's queries about storage and transportation of the sweat lodge, *see id.*, are hardly necessary to effectuate this Court's Orders. The Ninth Circuit has explained that it is a "misconception that the district court must also elucidate *how* to enforce the injunction." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (emphasis in original). Indeed, the *Fortyune* court questioned why the defendants would seek such "specific direction as to the method of compliance with the district court's injunction, except as a means of bolstering its principal position that it should not be required to modify its policy at all[.]" *Id.* The same question must be asked here.

Moreover, the Supreme Court has warned that intrusion into the management of a prison should be limited only to that which is necessary to ensure constitutional and statutory rights, lest the federal courts become "enmeshed in the minutiae of prison operations." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979); *see also Lewis v. Casey*, 518 U.S. 343, 363 (1996) (praising a court that did not "thrust[] itself into prison administration and instead permitt[ed] prison administrators to exercise wide discretion within the bounds of constitutional requirements." (quoting *Bounds v. Smith*, 430 U.S. 817, 832–33 (1977) (internal punctuation omitted). As long as it provides Mr. Chernetsky sweat lodge access as required by the Orders, the State may follow any lawful policy it chooses regarding minor logistical

concerns. "The wide range of 'judgment calls' that meet constitutional and statutory requirements are confided to officials outside of the Judicial Branch of Government." *Bell*, 441 U.S. at 562. This Court found that the State's denial of sweat lodge access to Mr. Chernetsky violated RLUIPA, and it ordered it to provide access. No more is required.

Likewise, the State's questions about the *res judicata* and collateral estoppel effects of this Court's Orders and orders in other cases (Opp'n at 10), and about the logistics of particular prisons are irrelevant and inappropriate.[1] "The federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). The effects of this order on other cases will be decided by the courts hearing those cases. Moreover, many of these "unanswered questions" have already been raised, considered, and rejected by the Court at summary judgment. *See infra* § II.

In short, the State has taken no steps to provide Mr. Chernetsky with sweat lodge access. Its attempts to find technical excuses to avoid complying with this

---

[1] Defendants incorrectly state that Mr. Chernetsky is currently housed at Southern Desert Correctional Center ("SDCC"). Opp'n at 17. In fact, within days of meeting with his appointed counsel for the first time, Mr. Chernetsky was transferred from SDCC to Lovelock Correctional Center, which is one of the institutions that the State acknowledges previously permitted Wiccan inmates to practice the sweat lodge rite. Opp'n at 6. Likewise, contrary to the State's suggestion *see id.*, Mr. Chernetsky has been a medium-custody inmate during the great majority of this case, aside from occasional stays in close custody pending risk assessment as a part of transfers between NDOC facilities. None of these facts have any bearing on the State's noncompliance with the orders, the sole question at issue in this proceeding.

Court's Orders are precisely the type of "experimentation with disobedience" that the Supreme Court and Ninth Circuit have condemned. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 954–55 (9th Cir. 2014) ("By construing their obligations narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction, the Defendants assumed the risk that their attempts at technical compliance would prove wanting."). This Court ordered the State to provide Mr. Chernetsky access to a sweat lodge. The State, by its own admission, has not done so, despite requests from Mr. Chernetsky, including the January 2015 request that expressly invoked this Court's Orders. Those are the sole relevant facts, and they are uncontested.

### B. A Finding of Contempt on the Papers Is Appropriate

In cases where the material facts are undisputed, the Ninth Circuit has upheld the propriety of finding contempt based on the papers. "[W]here, as here, the affidavits offered in support of a finding of contempt are uncontroverted, we have held that a district court's decision not to hold a full-blown evidentiary hearing does not violate due process." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1998). After each side has had an opportunity to introduce its affidavits and declarations, the Court "may thereafter treat as true the facts set forth in uncontroverted affidavits." *Id.* The State concedes that the facts are "virtually

7

undisputed," Opp'n at 5, and introduces no counter-declarations or documentary evidence to dispute any of Mr. Chernetsky's evidence.

The State has therefore had "ample notice and an opportunity to respond to the possibility that the court would find [it] in contempt." *Thomas, Head & Greisen Emps. Trust v. Buster*, 95 F.3d 1449, 1458 (9th Cir. 1996). Due process is thus satisfied, and this Court may enter a finding of contempt on the papers.

## II.     THE STATE'S COLLATERAL ATTACKS ON THE ORDER ARE PRECLUDED BY CLEARLY ESTABLISHED SUPREME COURT AUTHORITY

The State's attempts to attack the correctness of this Court's Orders are precluded by long-settled Supreme Court precedent. The State's Opposition brief attempts to relitigate each of the elements that this Court decided against it in the Summary Judgment order: it claims "security and cost issues" counsel against sweat lodge access, Opp'n at 3, 19–21; claims that sweat lodges are unnecessary to Mr. Chernetsky's practice of his religion, Opp'n at 6–7; attempts to defend its policy of limiting sweat lodge access to Native Americans, Opp'n at 7–8, 18–19; and argues that Mr. Chernetsky's claim should have been precluded by another lawsuit filed after his own by other inmates at a different prison, Opp'n at 6. It repeats factual contentions that this Court previously rejected, such as the State's false and unsupported assertion that the sweat ritual is related to cleanliness rather than a crucial religious rite through which Mr. Chernetsky communes with his deity. Opp'n at 5. Indeed, the State concludes its brief by directly questioning this Court's

8

finding that "the denial of access to sweat lodges" to Mr. Chernetsky constitutes "a 'substantial burden.'" Opp'n at 24.

Even if this Court had not already rejected these very arguments, it is settled law that enjoined parties cannot relitigate the correctness of an order during contempt proceedings:

> It would be a disservice to the law if we were to depart from the long-standing rule that *a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed* and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. . . . [D]isobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place.

*Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) (emphasis added).

That rule, which the Supreme Court dubbed "long-standing" more than sixty-five years ago, is beyond dispute. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 889 (Fed. Cir. 2011) ("Sixty years later, that law remains unchanged").[2] Plainly stated, defendants "cannot take it upon themselves to violate a court order" and later "rely on a collateral attack later to protect them from being held in contempt." *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:08-CV00722-RCJ-PAL, 2009 WL 4019424, at *6 (D. Nev. Nov. 19, 2009) (Jones, J.) (citing *Walker v. City of*

---

[2] The limited exceptions to this rule are rare circumstances not present in this case, and not invoked by the State. These are: lack of jurisdiction; a special rule governing subpoenas that violate the Fifth Amendment right against compelled incrimination; and, arguably, orders affecting a party's constitutional rights that lack any colorable basis in the law whatsoever. *See In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 727 (9th Cir. 1989).

*Birmingham*, 388 U.S. 307 (1967)). The State's attempt to relitigate the merits of the injunction is precluded by well-established precedent, and should be rejected.

### III. THE STATE HAS ESTABLISHED NO COGNIZABLE DEFENSE TO CONTEMPT

#### A. Contrary To The State's Arguments, This Court's Judgment Is Undoubtedly A Final Order

The State appears to argue that this Court's Orders and judgment were not final orders, justifying its noncompliance. *See* Opp'n at 3 ("[I]f it were to become a final decree and enforceable Order. . . ."; "[A] final decision is best left for a court that has *all* the facts before it prior to issuing a final ruling."). These statements evince a fundamental misunderstanding of the effect of a permanent injunction pending appeal. This Court entered judgment requiring the State to provide Mr. Chernetsky with sweat lodge access. Under Federal Rule of Civil Procedure 62(a)(1), injunctions are not stayed pending appeal unless the court orders otherwise. Indeed, the Supreme Court has explicitly warned enjoined parties that they must comply with an order pending appeal unless they seek and obtain a stay:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, *he must comply promptly with the order pending appeal.* . . . The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.

*Maness*, 419 U.S. at 458–59 (emphasis added; quotation marks omitted).

10

The State, refusing to recognize this long-established rule, continues to violate the injunction. By its own admission, it "assumed" Mr. Chernetsky "would wait for the outcome of the appeal or a remand prior to taking any further action." Opp'n at 3.[3] And it professes to have been "more than a bit surprised" that this Court rejected its erroneous understanding of *res judicata* and that it "would allow Chernetsky to obtain the materials to build his own sweat lodge and thereafter allow him to engage in sweats." *Id.* at 3–4. But unfounded assumptions and disappointment with judicial rulings provide no shelter from the *Maness* rule that an injunction must be obeyed pending appeal, nor are they defenses to contempt.

### B. Good Faith Is No Defense To Contempt

Despite this Court's Orders, the State asserts that it "cannot, in good faith, allow the purchase and construction of a sweat lodge. . . ." Opp'n at 16. To the extent that this is an attempt to raise a good faith defense, the Supreme Court and Ninth Circuit have each clearly held that such a defense is unavailable. "There is no basis in law for a good faith exception to the requirement of obedience to a court order." *Inst. of Cetacean Research*, 774 F.3d at 955 (quoting *In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987). "Intent is not an issue in

---

[3]   The State notes that Mr. Chernetsky has "rejected" its proposal to participate in a joint request to vacate this Court's judgment and remand for additional discovery in this case. Opp'n at 3. That Mr. Chernetsky would decline to self-reverse a hard-won judgment in his favor after more than seven years of litigation should come as no surprise.

11

civil contempt proceedings. The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983).

The only exception is a "narrow" one for "a good faith and reasonable [mis]interpretation" of an order. *Inst. of Cetacean Research*, 774 F.3d at 953. As discussed *supra*, this court's Orders plainly required Defendants to provide Mr. Chernetsky with equal access to sweat lodges: the Court stated explicitly that "Defendants cannot deny sweat lodge access to one religious group . . . when Defendants are already bearing these same burdens for the benefit of another religious group." Dkt. No. 173 at 2. If the State genuinely believed that this order allowed it to continue granting preferential treatment to Native American inmates over Wiccans, its belief was unreasonable, and not subject to the narrow exception.

Like the contemnors in *Inst. of Cetacean Research* before them, the State now parses the language for an excuse not to comply with the injunction. But court orders are interpreted in light of the purposes for which they were issued, and the Ninth Circuit has condemned attempts to "nullify," "evade," and "ignor[e] [the] spirit" of injunctions. 774 F.3d at 954. Indeed, categorically denying Mr. Chernetsky sweat lodge access is not a mere "semantic battle" over the definition of technical terms; it is defiance of the central goal of the order. *Id.* at 953. In such circumstances, courts will not condone "experimentation with disobedience," *id.* at 954 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192–93 (1949)), and

will reject "self-serving interpretation[s]" that undermine the central goal of the order. *Id.*

It is telling that at no point since the Orders were issued did the State move for clarification of its obligations: not when Mr. Chernetsky cited the Orders and requested sweat lodge access in January, not when Mr. Chernetsky's counsel warned the State that if it did not comply contempt proceedings would be initiated, not even now in its Opposition. *See Inst. of Cetacean Research*, 774 F.3d at 954 ("Though they had every opportunity, the Defendants did not seek clarification of their obligations."). Having failed to seek clarification, the State's belated claims of vagueness ring hollow.

The State's efforts to manufacture ambiguities and excuses fail. This Court clearly ordered the State to provide Mr. Chernetsky with sweat lodge access; the State has not done so. The State should be found in civil contempt until it complies.

## IV. NO STAY HAS BEEN REQUESTED OR EFFECTED

Although the State now "acknowledges that the better practice would have been to file for a stay following the entry of judgment," it did not seek one until *after* Mr. Chernetsky filed his motion for contempt. Opp'n at 3.[4] That is too late. "There is no automatic stay in actions for injunctions; in those actions a judgment, whether interlocutory or final, may be stayed only by court order." 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.). As the Supreme Court has held, a party who violates an order

---

[4] Mr. Chernetsky will file a separate response to the State's belated stay motion.

13

pending appeal can and should be held in contempt. "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness*, 419 U.S. at 458. A party cannot violate an order and then ask for a retroactive stay.

### A. The Plain Text Of The PLRA Contradicts The State's PLRA Argument

The State casually suggests that the Prisoner Litigation Reform Act ("PLRA") may have automatically stayed this Court's injunction. *See* Opp'n at 22 n.7. It does not quote the relevant statutory provision, and for good reason: even assuming that a RLUIPA action is a "civil action with respect to prison conditions" within the meaning of 18 U.S.C. § 3626, the "automatic stay" provision only applies upon "[a]ny motion to modify or terminate prospective relief made under subsection (b)." 18 U.S.C. § 3626(e)(2). No motion under section 3626(b) has been made—nor could one have been made.[5] Accordingly, there is plainly no stay in effect.

### B. Rule 62(d), By Its Terms, Does Not Apply To Injunctions

The State's argument that this Court's Orders may be stayed under Federal Rule of Civil Procedure 62(d) (Opp'n at 22) is similarly contradicted by the plain text of the rule. Rule 62(a)(1) explicitly provides that "an interlocutory or final

---

[5] Section 3626(b) governs motions to vacate or modify injunctions on the basis of changed circumstances *after two years have passed* since the initial injunction, as well as overbroad injunctions not tailored to the actual legal violation at issue in the case. Even when Section 3626(e)(2) applies, the stay ends when the district court rules on the motion to vacate.

14

judgment in an action for an injunction" is "not stayed after being entered, even if an appeal is taken." Fed. R. Civ. Proc. 62(a). And while Rule 62(d) provides that in most cases an applicant may obtain a stay by posting a supersedeas bond, it explicitly excludes those cases "described in Rule 62(a)(1)," namely "final judgment[s] in an action for an injunction." Fed. R. Civ. Proc. 62(a),(d); *see also* 11 Fed. Prac. & Proc. Civ. § 2905 (3d ed.) ("This kind of stay may not be obtained in injunction cases"). This is because the very purpose of a supersedeas bond is to provide security for a money judgment so the prevailing party is not harmed by the delay in executing on the judgment. *See, e.g.*, *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (describing purpose of supersedeas bond). Finally, the State never attempted to post, nor did this Court approve a supersedeas bond in this case. To do so would have been frivolous, as is the State's argument here.

## V.    CONTEMPT PROCEEDINGS ARE APPROPRIATE HERE

In lieu of submitting evidence to carry their burden, Defendants have accused Mr. Chernetsky of an "utter lack of civility," invoking "the nuclear option" in bringing this motion, and instituting a "scorched earth approach" to this litigation "without warning." Opp'n at 2, 23. Normally such rhetoric is best ignored, but Mr. Chernetsky's counsel takes his ethical responsibilities seriously, and when these accusations are made by the State of Nevada, by and through its Attorney General, they merit a brief response. The accusations are inappropriate and baseless.

15

*First*, far from being a "nuclear option," a motion for contempt is the appropriate procedural mechanism for enforcing compliance with a valid injunction, especially against the State. As the Supreme Court has made clear, "federal courts are not reduced to issuing injunctions against state officers and hoping for compliance." *Hutto v. Finney*, 437 U.S. 678, 690 (1978). For more than a century, the Supreme Court has held that contempt proceedings are the proper means to compel obedience the court's lawful authority. *See, e.g,, Ex parte Robinson*, 86 U.S. 505, 510 (1873) ("The power to punish for contempts is inherent in all courts; its existence is essential . . . to the enforcement of the judgments, orders, and writs of the courts"). "[A] contempt proceeding" is "[t]he procedure to enforce a court's order. *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948).

Moreover, the State is no stranger to contempt proceedings. *See, e.g., Burnside v. Whitley*, No. 2:13-cv-01102-MMD-GWF, Dkt. No. 36 (D. Nev. Oct. 16, 2015) (Judge Du finding that the State of Nevada violated consent decree in connection with contempt proceedings). And to the extent it is possible for the State of Nevada to experience an "escalation of emotions," (Opp'n at 23) such an escalation is unwarranted here. Mr. Chernetsky has sought no sanctions other than those intended to compel compliance, nor has he alleged any malice or ill intent by any individual state representative or employee. Indeed, "[i]ntent is irrelevant to a finding of civil contempt," *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856

16

(9th Cir. 1992), and Mr. Chernetsky's only goal in these proceedings is to compel compliance with this Court's Orders and vindicate his rights.

*Second*, the State's suggestion that this motion was brought "without warning," (Opp'n at 23) is baseless. On September 19, 2015, upon meeting Mr. Chernetsky for the first time, Mr. Chernetsky's appointed *pro bono* counsel learned this Court's Orders had not been complied with. Milosavljevic Decl. ¶ 5. Although neither the Federal Rules of Civil Procedure nor this Court's Local Rules required him to do so, on September 29, 2015, Mr. Chernetsky's counsel informed the State of Mr. Chernetsky's intent to file this motion if the State did not comply with the injunction and offered to meet and confer to attempt to resolve the issue. *Id.* ¶ 11 & Exh. C. In response, the State's counsel made clear that it would not comply with the Court's Orders to provide Mr. Chernetsky sweat lodge access. *Id.* ¶ 13 & Exh D. Additionally, in an October 6, 2015 Ninth Circuit filing served on the State, Mr. Chernetsky represented to that court that he intended to bring this motion. Plaintiff-Appellee/Cross-Appellant's Motion to Assign Case to Prior Panel, *Chernetsky v. State of Nevada*, No. 14-17015, Dkt. No. 28, at 3 n.2 ("Defendants have not sought a stay pending appeal, but have continued to deny Mr. Chernetsky access to a sweat lodge. Mr. Chernetsky currently intends to initiate contempt proceedings in the District Court."). The State had fair warning of this impending motion for almost a month and a half and *still* failed to comply with this Court's Orders or to move for a stay.

17

## VI. CONCLUSION

No facts material to this motion are in dispute, and no hearing is necessary. This Court has ordered the State to provide Mr. Chernetsky with sweat lodge access, and the State has made no effort to comply with those Orders. Mr. Chernetsky respectfully requests that this Court hold Defendants in civil contempt and impose such sanctions against the State as the Court deems just and proper until such time as the State complies.

Dated: December 3, 2015

Kirkland & Ellis LLP

/s/ Derek Milosavljevic

Derek Milosavljevic
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071

Alexis A. Plunkett
LAW OFFICE OF ALEXIS PLUNKETT
2657 Windmill Parkway #613
Henderson, Nevada, 89074

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I, Derek Milosavljevic, the undersigned, certify under penalty of perjury, that on December 3, 2015, I caused a true and correct copy of the attached Reply in Support of Plaintiff's Motion for Civil Contempt to be filed with the clerk using the CM/ECF system, which automatically sends an e-mail notification of such filing to counsel of record indicated below, registered CM/ECF users.

    Micheline N. Fairbank
    Deputy Attorney General
    mfairbank@ag.nv.gov

    Clark G. Leslie
    Office of the Attorney General
    cleslie@ag.nv.gov

Dated:    December 3, 2015    Kirkland & Ellis LLP

    /s/ Derek Milosavljevic

    Derek Milosavljevic
    KIRKLAND & ELLIS LLP
    333 South Hope Street
    Los Angeles, California 90071