AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
State of Nevada
Public Safety Division
100 N. Carson Street
Carson City, NV  89701-4717
Tel: (775) 684-1150
E-mail:  drands@ag.nv.gov


*Attorneys for Defendants*
*Jane Foraker-Thompson, Donald Helling,*
*Dorothy Nash Holmes, Robert LeGrand,*
*Jack Palmer, Cheri Scott, Lenard Vare,*
*Glen Whorton, and the State of Nevada*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY THOMAS CHERNETSKY, | Case No. 3:06-cv-00252-RCJ-WGC |
| Plaintiff, | |
| vs. | **MOTION FOR SUMMARY JUDGMENT** |
| THE STATE OF NEVADA, et al., | |
| Defendants. | |

Defendants, Jane Foraker-Thompson, Donald Helling, Dorothy Nash Holmes, Robert LeGrand, Jack Palmer, Cheri Scott, Lenard Vare, Glen Whorton, and the State of Nevada (Defendants), by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Douglas R. Rands, Senior Deputy Attorney General, hereby submit this Motion for Summary Judgment (hereafter "Motion"). This Motion is made pursuant to Fed. R. Civ. P. 56(c) and is based upon the attached Memorandum of Points and Authorities and all papers and pleadings on file herein.

///

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   NATURE OF THE MOTION

Plaintiff cannot demonstrate that the exercise of his Wiccan faith has been substantially burdened by the implementation and application of NDOC Administrative Regulation ("AR") 810. Even if this Court should find that Plaintiff can meet his burden, Defendants will demonstrate that AR 810 is the least restrictive means of furthering Defendants' compelling governmental interest. As such, Defendants assert that they are entitled to summary judgment as to Plaintiff's Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. 2000cc, *et seq.* claim.

## II.   STATEMENT OF THE CASE

Plaintiff is a *pro se* inmate litigant, currently incarcerated by the NDOC at Warm Springs Correctional Center (WSCC). Plaintiff commenced this action by filing a Civil Rights Complaint that was screened and entered on July 7, 2006. (ECF Nos. 5 and 6) In Plaintiff's Complaint, he alleged two causes of action: RLUIPA and the Free Exercise Clause of the First Amendment. He also alleged that his Fourteenth Amendment Equal Protection rights have been violated. (ECF No. 6.) Plaintiff generally alleged that the implementation of NDOC AR 810 impinged his religious freedoms under RLUIPA and the First Amendment, and that he was transferred from Lovelock Correctional Center ("LCC") in retaliation for his attempts to seek redress. *Id.*

On October 11, 2006, Defendants moved to dismiss Plaintiff's Complaint. (ECF No. 22.) Plaintiff opposed Defendants' motion on October 25, 2006. (ECF No. 28.) This Court considered Defendants' Motion to Dismiss as a Motion for Summary Judgment and granted Defendants summary judgment as to all claims on July 13, 2007. (ECF No. 37.)

Plaintiff appealed the dismissal of his Complaint on April 30, 2008, to the Ninth Circuit Court of Appeals. (ECF No. 44.) On July 29, 2010, the Ninth Circuit Court of Appeals issued a Memorandum affirming in part and vacating in part this Court's order granting Defendants' summary judgment. (ECF No. 51.) In the Ninth Circuit's Memorandum, the Court considered Plaintiff's claims as asserted under RLUIPA. *Id.* at

p. 2. The Court found a genuine issue of material fact as to whether the Defendants had established a compelling governmental interest in restricting Plaintiff's religious exercise under RLUIPA, in particular his access to a sweat lodge, and that Defendants had not demonstrated that AR 810 was the least restrictive means in furthering the Defendants' interest. *Id*. The Ninth Circuit did not consider Plaintiff's Constitutional claims under the First and Fourteenth Amendments as Plaintiff did not raise them on appeal. *Id*. at p. 3. This Court issued its Order on Mandate on September 22, 2010. (ECF No. 53.)

On June 26, 2012, Defendants answered Plaintiff Complaint. (ECF No. 69.) On December 27, 2012, the Court issued its Scheduling Order in this matter. (ECF No. 83.) The Plaintiff filed an Amended Complaint on March 27, 2013.  (ECF No. 89).  The Defendants filed a Motion for Summary Judgment (ECF No. 123).  This Motion addressed Plaintiff's RLUIPA claim and the many accommodations he was demanding, including his demand for anointing oils.  (Id.).  Plaintiff filed a separate Motion for Summary Judgment on June 24, 3013.  (ECF No. 127).  On August 14, 2013, the Magistrate Judge issued his Report and Recommendation (R & R) (ECF No. 140).  Magistrate Judge Cobb also issued a second R & R on January 1, 2020.  (ECF No. 154).  The District Court issued its Order granting in part and denying in part the Recommendations of the Magistrate Judge.

The Court's order was appealed by both parties.  The Ninth Circuit vacated the rulings of this Court because the NDOC Religious Practice Manual was amended after the appeal was filed which "changed [Plaintiff's] access to oils" (ECF No. 248).  The matter was remanded to this Court to determine if there is still a dispute and to adjudicate the matter based on current regulations.  (Id.).

After some unsuccessful negotiations between the parties, this Court ordered each party to file a Motion for Summary Judgment by October 22, 2020.  (ECF No. 269).  This is the Motion for Summary Judgment by the Defendants in this action.

///

///

///

### III.    STATEMENT OF PERTINENT UNDISPUTED FACTS

Plaintiff is an inmate incarcerated by the NDOC and currently housed at WSCC. For purposes of this litigation, Plaintiff's religious affiliation is characterized as Wiccan, a religious faith recognized by NDOC.  (Exhibit 1) In developing AR 810, as adopted on  June 7, 2004, NDOC spent three years drafting, reviewing, editing and ultimately adopting the regulation. (Exhibit 2.) When promulgating AR 810, NDOC officials researched the various religions practiced by inmates within its institutions. *Id*. As part of that research, NDOC employees consulted with outside experts on various religions. *Id*. Specific to the Wiccan faith, NDOC officials also reviewed texts and considered information from individuals considered to have extensive knowledge relating to the Wiccan faith or respected as experts relating to the Wiccan faith.  *Id*.  In November of 2016, the AR was revised.  (Exhibit 2.)

Additionally, when promulgating AR 810, NDOC sought input from inmates who contributed ideas and suggestions, both orally and in writing, as to the Wiccan faith.  *Id*.  These ideas and suggestions from inmates addressed, among other things the issues raised by Plaintiff in his Amended Complaint.  *Id*.

NDOC is legally obligated to protect the safety and security of inmates, staff and the general public. NRS 209.131. In this regard, NDOC is mandated to create regulations for the purpose of carrying out its legal obligations under the law. NRS 209.111. AR 810 was adopted pursuant to the legal authority under the laws of the State of Nevada. NRS 209.131.

AR 810 provides regulations concerning inmate religious practices. Inmates can purchase herbs, minerals, oils and incense through the institutional canteen. Administrative Regulation 810.2 attached as Exhibit 3.  However, these items must be stored under control of the Chaplain or brought in by volunteers for use in services, and taken out after the service. (Id.)

///

///

///

4

IV.   **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact[.]" FED. R. CIV. P. 56(a).   A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). "In determining summary judgment, a court applies a burden-shifting analysis." *Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, 382 F. Supp. 3d 1114, 1118 (D. Nev. 2019).   When the moving party (typically the defendant) does not bear the burden of proving a claim at trial, "the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case [.]" *Id.*

V.   **LEGAL ARGUMENT**

A.   **This Court Should Grant Summary Judgment on the Religious Practice Claim**

This Court should grant summary judgment because NDOC's restrictions serve a legitimate penological interest. Plaintiff alleges that NDOC's policy of restricting the use of anointing oils to group worship substantially burdens his religious practice. ECF No. 270 at 2. Plaintiff requests an injunction requiring the NDOC allow him to use natural oils from an outside vendor. (Id.).

Plaintiff misapprehends the ruling of the Ninth Circuit Court in this matter.  He argues, in his Motion for Summary Judgment that the Defendants "assented to Plaintiff's access to natural anointing oils when they told the Ninth Circuit they changed their regulation and the Court above issued its memorandum." (ECF No. 270 at 3).  As this Court is aware, the Defendants' appeal to the Ninth Circuit, which was voluntarily dismissed, dealt only with the sweat lodge issue.  The Court allowed the motion to voluntarily dismiss. (ECF No.270 at 16).  Plaintiff argues that the Defendants request to dismiss their appeal on the sweat lodge issue gives him carte blanch to purchase oils from an outside vendor.

(ECF No. 270 at 2, III (6)) This is not what the Court held and is not what is allowed under the regulations.

The remaining issue in this matter, the anointing oil claim, was remanded to this Court to determine if there remains a dispute and to adjudicate based on the revised AR 810. (ECF No. 270 at 17). The Court did not hold Plaintiff was entitled to purchase any oils from an outside vendor.

### 1.    The Turner Factors Do Not Support Plaintiff's Position

The Supreme Court has held that prison regulations that are alleged to violate constitutional rights are evaluated under the reasonableness test. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). This test is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.*

When determining whether a prison regulation is reasonable, or whether it violates an inmate's religious rights, courts apply the *Turner* balancing test. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *see also Resnick v. Adams*, 348 F.3d 763, 768 (9th Cir. 2003) (applying the *Turner* balancing test to religious claims). The *Turner* test requires courts to balance the following facts: (1) whether the regulation is reasonably related to a legitimate penological interest, (2) whether there is an alternative means of exercising the right, (3) the impact the proposed accommodation would have on guards, other inmates, and the allocation of prison resources, and (4) whether the absence of ready alternatives is evidence of the reasonableness of the regulation. *Id.* Here, the balancing factors demonstrate the NDOC has not violated Plaintiff's First Amendment rights because it is reasonable.

### a.    The Regulation is Related to Safety and Security

Courts must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system [.]" *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Supreme Court recognized internal institutional security is "perhaps the most legitimate of penological goals." *Id.* at 133. Here, NDOC's prohibition on the personal possession and use of scented prayer oils, herbs, and spices serves the important penological interest of institutional

security. As detailed by Acting Associate Warden Frobes, (declaration attached as Exhibit 4), scented oils, herbs, and spices present the following security concerns:

1) Scented oils, herbs, and spices are flammable under the right conditions. Inmates may not possess flammable materials as it constitutes a significant danger to inmates, staff and the facility, be it danger of fire within a cell, staff attack, inmate attack, destroying contraband.

2) Inmates may use scented oils to mask the scent of drugs and contraband.

3) Inmates may use scented oils to create slippery surfaces, which create a danger to other inmates or staff.

4) These oils can be used on the inmates own bodies to avoid cell extraction.

5) The incense oil has been used to create contraband inks, tattoo inks, and also inmate made alcohol, known as "pruno."

6) The empty vials that contain the scented oils may be used to hide drugs, or mix other banned substances.

Accordingly, NDOCs requirement that incense, scented oils, herbs, and spices, be purchased and used only for group worship serves a legitimate penological interest.

### b. The Proposed Accommodation Significantly Impacts WSCC

This Court should reject Plaintiff's proposed accommodation because it will significantly impact WSCC's operations. Plaintiff proposes that he be allowed to purchase and use oils from an outside vendor. ECF No. 270 at 3. However, this proposed regulation would significantly impact WSCC's operation and constitute a financial burden.

The impact on guards, other inmates, the allocation of prison resources, and the safety of visitors are all relevant considerations. *Overton*, 539 U.S. at 135. When a regulation impacts the prison system's finances or impacts safety, courts are "particularly deferential" to the prison administrator's decision. *Id.* Allowing inmate possession of scented oil, as personal property, presented the following deleterious effects and burdens on staff and other inmates:

1)     The oils provide possible harm to other inmates from allergic reaction due to possession of oil in cells, or excessive use of scents on skin or clothing.

2)     The oils created a staffing and safety concern in that scented oil/perfumes may be used for illegal bartering.

3)     The most significant burden fell on the mail room and intake staff, because institutions will likely receive numerous unauthorized packages for inmates from outside persons that contained scented oils and perfumes.

4)     In the event that the inmate did pre-approve a package with scented oils, it is incumbent upon the staff to determine potential danger to other inmates or staff, or whether the oils are tainted prior to allowing inmate possession.

5)     In the event that staff determined the oils sent from outside persons were unsafe, tainted, unapproved, or otherwise improper, NDOC must return the packages and undertake the cost and time to do so.

6)     Allowing Plaintiff to possess scented oils in his cell will have an effect on the Chaplains and RRT, as they will need to undertake an individual study of suitability of scented oils for each recognized religion.

7)     Staff would have to be allocated to escort and supervise Plaintiff while he used the items at the recreation yard. Further, the recreation yard would have to be closed to other inmates and may require the adjustment of the other units' yard time.

*See* Exhibit 4.

      **c.**      **The Proposed Accommodation Poses More Than a *De Minimis* Cost**

The final factor "does not impose a least-restrictive-alternative test [.]" *Overton*, 539 U.S. at 136. Instead courts must determine whether the proposed accommodation "fully

accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id.*

Here, the proposed regulation goes far beyond a *de minimis* cost as it impacts WSCC's financial operation (requiring additional guards or reassigning tasks while Plaintiff is supervised), the institution's security, and the day-to-day operations of the prison yard. For example, NDOC will have to schedule correctional officers to supervise Plaintiff. Similarly, the NDOC may have to adjust the institution's yard schedule to accommodate Plaintiff to allow him to individually use the oils. Accordingly, this Court should find that the regulation preventing inmates from possessing or using anointing oils in their cell or purchasing such from an outside vendor is rationally related to a penological goal and thus does not violate Plaintiff's First Amendment rights.

Further, this Court has already decided this issue in a remarkably similar matter. In *Beraha v State of Nevada* 3:17-cv-RCJ-CLB, Magistrate Judge Baldwin issued a report and recommendation on this issue. (Exhibit 5). Her recommendation was adopted by this Court. (ECF No. 131). In Judge Baldwin's Report and Recommendation, held:

> In sum, the Turner factors weigh in favor of the Defendants on this claim. The serious safety and security concerns raised by allowing [the Plaintiff] to personally possess and use incense, herbs, and spices outweighs the curtailment of his religious practice. Thus, the court concludes that the regulation is reasonably related to a legitimate penological purpose and is valid under Turner.

Exhibit 5 at 16:7

### 2.    The Regulation does not Violate the RLUIPA

To state a claim under RLUIPA, a prison must show that: (1) he participates in a religious exercise and (2) the prison regulation substantially burdened that exercise. *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). The burden then shifts to the State to provide its regulation is the least restrictive means of furthering a compelling governmental interest. *Id.* Here, Defendants do not concede Plaintiff has stated a claim

under the RLUIPA. However, Defendants argue the regulation is the least restrictive means possible to ensure institutional safety.  As explained above, anointing oils pose a unique security threat to prison institutions. These oils can be used to conceal illicit substances, used in prison tattoos, used to make prison alcohol, and used to prevent cell extractions. (Exhibit 4).

In *Blake v. Rubenstein*, a District Court in Virginia found the prison's policy of forbidding scented oil for worship did not prevent inmates from engaging in worship. 2016 WL 5660355, *23 (S.D.W. VA. Apr. 5, 2016) (holding plaintiff was "merely prevented from engaging in worship in their preferred manner by using scented oils."). In *Blake*, the plaintiff argued they could not "properly perform Hare Krishna Deity worship because they cannot obtain or possess scented oils." *Id*. at 22. The prison officials argued they did not impose a substantial burden because inmates could use unscented oils during prayer services. *Id*. The Court agreed and found "Plaintiffs are not prevented from engaging in worship by using unscented oils." *Id*. at 23.

Similarly, the Northern District of California found that while the denial of scented oil presents "some impediment, it "does not constitute a significantly great restriction upon the exercise of [plaintiff's] religious beliefs, nor does it make the religious exercise effectively impracticable." *Curry v. California Dep't of Corrections*, 2012 WL 968079, *6 (N.D. Cal. Mar. 21, 2012). In Curry, the issue was whether the prohibition on scented oils substantially burdened the plaintiff's religious exercise, which consisted of praying three times daily. *Id*. The Court found that the plaintiff was not prevented from praying three times a day without the oil. *Id*. Accordingly, the Court found the denial of scented oils did not present a substantial burden and thus did not violate RLUIPA. Id.

In fact, the Ninth Circuit Court of Appeals has rejected RLUIPA challenges to prison policies that restrict scented oil. See *Riggins v. Clarke*, 403 Fed.Appx. 292, 295 (9th Cir. 2010) (holding the inmate did not demonstrate the lack of oil substantially burdened his religious practice and thus the policy did not violate RLUIPA). In *Nance v. Miser*, the Ninth Circuit expressly approved of a prison policy that allowed inmates to "order scented oils

from an approved vendor, to be stored by the chaplain, and used under the chaplain's supervision." 700 Fed.Appx. 629, 633 (9th Cir. 2007). See also *Jenkins v. Sinclair*, 2018 WL 4608312 (W.D. Wash. Sep. 4, 2018,) ("The Ninth Circuit has expressly approved limitations on prisoner access to religious oils.").

Unfortunately, after careful consideration, the NDOC was unable to create a less restrictive policy that reasonably accommodated Plaintiff's religious requests, while protecting institutional security, without imposing a substantial cost on the NDOC. Additionally, it should be noted that AR 810 does allow the use of scented oils for religious purposes in a group setting under the supervision of the Chaplain. Accordingly, this Court should hold Plaintiff's proposed accommodation is unreasonable and there is not a less restrictive measure available.

## VI.   CONCLUSION

This Court should grant summary judgment for Defendants. This Court should hold NDOC's prohibition on inmates possessing scented oils is reasonably related to a legitimate penological goal and is the least restrictive means of achieving the goal. Therefore, summary judgment is appropriate.

///

///

///

///

///

///

///

///

///

///

///

///

**VII.   EXHIBITS**

1. Exhibit 1 – AR 810

2. Exhibit 2 – Declaration of Dorothy Nash Holmes

3. Exhibit 3 – Nevada Department of Corrections Faith Group Overview

4. Exhibit 4 – Declaration of David Frobes

5. Exhibit 5 – Report and Recommendation Filed in Beraha v. State (3:17-cv-00366-RCJ-CLB)

6. Authentication of Christopher Franklin

DATED this 22nd day of October, 2020.

AARON D. FORD
Attorney General

By:     */s/ Douglas R. Rands*
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 22nd day of October, 2020, I caused to be served a copy of the foregoing, **MOTION FOR SUMMARY JUDGMENT** by depositing for mailing via the U.S. Postal Service, to the following:

Anthony Chernetsky #44502
Warm Springs Correctional Center
P.O. Box 7007
Carson City, NV 89701

_/s/ Roberta W. Bibee_____
An employee of the Office
of the Attorney General