UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY THOMAS CHERNETSKY, | |
| Plaintiff, | Case No. 3:06-cv-00252-RCJ-WGC |
| vs. | **ORDER** |
| THE STATE OF NEVADA, et al., | |
| Defendants. | |

After more than a decade of litigation, the Ninth Circuit has remanded this case to decide the singular issue of whether Nevada Department of Corrections (NDOC) Administrative Regulation (AR) 810's restriction on anointing oils from outside vendors violates Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment. Plaintiff is a sincere member of the Wiccan faith and seeks to have anointing oils for the practice of his religion, but under AR 810, he is only allowed a synthetic baby oil sold through the prison's canteen. The Court finds this regulation is essential to the prison's safety and security, so it does not unlawfully infringe upon Plaintiff's rights. It therefore grants summary judgment in favor of Defendants.

///

## PROCEDURAL BACKGROUND

Plaintiff is a *pro se* inmate litigant, currently incarcerated by the NDOC at Warm Springs Correctional Center (WSCC). Plaintiff commenced this action by filing a Civil Rights Complaint that was screened and entered on July 7, 2006. (ECF Nos. 5 and 6) In Plaintiff's Complaint, he alleged three causes of action: a RLUIPA violation, a violation of the Free Exercise Clause of the First Amendment, and a violation of his Fourteenth Amendment Equal Protection rights. (ECF No. 6.) Plaintiff generally alleged that the implementation of NDOC AR 810 impinged his religious freedoms under RLUIPA and the First Amendment, and that he was transferred from Lovelock Correctional Center ("LCC") in retaliation for his attempts to seek redress. (*Id.*)

On October 11, 2006, Defendants moved to dismiss Plaintiff's Complaint. (ECF No. 22.) Plaintiff opposed Defendants' motion on October 25, 2006. (ECF No. 28.) This Court considered Defendants' Motion to Dismiss as a Motion for Summary Judgment and granted Defendants' summary judgment as to all claims on July 13, 2007. (ECF No. 37.)

Plaintiff appealed the dismissal of his Complaint on April 30, 2008, to the Ninth Circuit Court of Appeals. (ECF No. 44.) On July 29, 2010, the Ninth Circuit Court of Appeals issued a Memorandum affirming in part and vacating in part this Court's order granting Defendants' summary judgment. (ECF No. 51.) In the Ninth Circuit's Memorandum, the Court considered Plaintiff's claims as asserted under RLUIPA. (*Id.* at 2.) The Court found a genuine issue of material fact as to whether Defendants had established a compelling governmental interest in restricting Plaintiff's religious exercise under RLUIPA, in particular his access to a sweat lodge, and that Defendants had not demonstrated that AR 810 was the least restrictive means in furthering Defendants' interest. (*Id.*) The Ninth Circuit did not consider Plaintiff's constitutional claims under the First and Fourteenth Amendments as Plaintiff did not raise them on appeal. (*Id.* at p. 3.) This Court issued its Order on Mandate on September 22, 2010. (ECF No. 53.)

On June 26, 2012, Defendants answered Plaintiff Complaint. (ECF No. 69.) On December 27, 2012, the Court issued its Scheduling Order in this matter. (ECF No. 83.) The Plaintiff filed an Amended Complaint on March 27, 2013. (ECF No. 89). Defendants filed a Motion for Summary Judgment (ECF No. 123). This Motion addressed Plaintiff's RLUIPA claim and the many accommodations he was demanding, including his demand for anointing oils. (*Id.*). Plaintiff filed a separate Motion for Summary Judgment on June 24, 2013. (ECF No. 127). On August 14, 2013, the Magistrate Judge issued his Report and Recommendation (R & R) (ECF No. 140). Judge Cobb also issued a second R & R on January 1, 2020. (ECF No. 154). This Court issued its Order granting in part and denying in part the R & Rs.

The Court's order was appealed by both parties. The Ninth Circuit vacated the rulings of this Court because the NDOC Religious Practice Manual was amended after the appeal was filed which "changed [Plaintiff's] access to oils" (ECF No. 248). The matter was remanded to this Court to determine if there is still a dispute and to adjudicate the matter based on current regulations. (*Id.*)

After unsuccessful negotiations, this Court ordered each party to file a Motion for Summary Judgment by October 22, 2020. (ECF No. 269). Plaintiff filed his Motion for Summary Judgment on October 1, 2020 (ECF No. 270). The Court ordered that the opposition to the Motion for Summary Judgment or response brief be filed by November 23, 2020. (ECF No. 269). Each side has filed a motion for summary judgment and response to each other's motion. (ECF Nos. 270, 271, 273, 274.)[1]

///

---

[1] Plaintiff also moves to strike Defendants' response as untimely. (ECF No. 275.) Plaintiff relies on LR 7-2(b), which states in part, "The deadline to file and serve any points and authorities in response to a motion for summary judgment is 21 days after service of the motion." But this deadline only applies "[u]nless the court orders otherwise." *Id.* Defendants filed their response on November 20, 2020. As the Court ordered any response was due by November 23, 2020, Defendants' response is timely. The Court thus denies Plaintiff's motion.

## LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

1  that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'
2  differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809
3  F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary
4  judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*,
5  880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and
6  allegations of the pleadings and set forth specific facts by producing competent evidence that
7  shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

8      At the summary judgment stage, a court's function is not to weigh the evidence and
9  determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
10 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are
11 to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely
12 colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.
13 Notably, facts are only viewed in the light most favorable to the non-moving party where there is
14 a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even
15 where the underlying claim contains a reasonableness test, where a party's evidence is so clearly
16 contradicted by the record as a whole that no reasonable jury could believe it, "a court should not
17 adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

18     **ANALYSIS**

19     *1.    Free Exercise of Religion*

20     "The right to exercise religious practices and beliefs does not terminate at the prison
21 door. The free exercise right, however, is necessarily limited by the fact of incarceration, and
22 may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."
23 *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); *see*
24 *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). In order to implicate the Free Exercise

Clause, the inmate's belief must be both sincerely held and rooted in religious belief. *See Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89–91.

The parties agree that Plaintiff is a sincere Wiccan and that he was denied access to the anointing oils that Plaintiff claims is necessary for the practice of his religion. This, however, does not end the court's inquiry. The court must engage in an analysis under *Turner* of the reasonableness of the restrictions in light of the safety and security concerns posited by the Defendants.

Defendants have identified the following concerns:

1) Scented oils, herbs, and spices are flammable under the right conditions. Inmates may not possess flammable materials as it constitutes a significant danger to inmates, staff and the facility, be it danger of fire within a cell, staff attack, inmate attack, or destroying contraband.
2) Inmates may use scented oils to mask the scent of drugs and contraband.
3) Inmates may use scented oils to create slippery surfaces, which create a danger to other inmates or staff.
4) These oils can be used on the inmates own bodies to avoid cell extraction.

///

> 5) The incense oil has been used to create contraband inks, tattoo inks, and also inmate made alcohol, known as "pruno."
> 6) The empty vials that contain the scented oils may be used to hide drugs or mix other banned substances.

(ECF No. 271 Ex. 4.)

The court finds there is a valid, rational connection between the restriction precluding personal possession and use of anointing oil and the legitimate governmental interests of institutional safety and security put forward by Defendants. *See Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993) (upholding a prohibition on prisoners keeping candles in their cells in light of generalized safety concerns).

Second, the court must consider "whether there are alternative means of exercising the right that remain[ed] open" to Plaintiff. Here, the Defendants do not argue that there is an alternative mechanism that would allow him to use anointing oil. Though not conclusive, the fact that no alternative means exist that allow Plaintiff to use anointing oil, is some evidence that the regulation is unreasonable. *Overton*, 539 U.S. at 135.

Third, the court is required to consider the "impact accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally." *Washington v. Harper*, 494 U.S. 210, 225 (1990). Plaintiff proposes that he be allowed to purchase and use oils from an outside vendor. (ECF No. 270 at 3.) However, this proposed regulation would significantly impact WSCC's operation and constitute a financial burden. The impact on guards, other inmates, the allocation of prison resources, and the safety of visitors are all relevant considerations. *Overton*, 539 U.S. at 135. When a regulation impacts the prison system's finances or impacts safety, courts are "particularly deferential" to the prison administrator's decision. *Id.* Allowing inmate possession of scented oil, as personal property, presented the following deleterious effects and burdens on staff and other inmates:

> 1) The oils provide possible harm to other inmates from allergic reaction due to possession of oil in cells, or excessive use of scents on skin or clothing.
> 2) The oils created a staffing and safety concern in that scented oil/perfumes may be used for illegal bartering.
> 3) The most significant burden fell on the mail room and intake staff, because institutions will likely receive numerous unauthorized packages for inmates from outside persons that contained scented oils and perfumes.
> 4) In the event that the inmate did pre-approve a package with scented oils, it is incumbent upon the staff to determine potential danger to other inmates or staff, or whether the oils are tainted prior to allowing inmate possession.
> 5) In the event that staff determined the oils sent from outside persons were unsafe, tainted, unapproved, or otherwise improper, NDOC must return the packages and undertake the cost and time to do so.
> 6) Allowing Plaintiff to possess scented oils in his cell will have an effect on the Chaplains and RRT, as they will need to undertake an individual study of suitability of scented oils for each recognized religion.
> 7) Staff would have to be allocated to escort and supervise Plaintiff while he used the items at the recreation yard. Further, the recreation yard would have to be closed to other inmates and may require the adjustment of the other units' yard time.

(ECF No. 271 Ex. 4.) Thus, the Court finds the third *Turner* factor ways in favor of Defendants. *See Overton*, 539 U.S. at 135 (when accommodating an inmate's demands "would cause a significant reallocation of the prison system's financial resources and would impair the ability of correctional officers to protect all who are inside a prison's walls," the court is "'particularly deferential' to prison administrators' regulatory judgments (quoting *Turner*, 482 U.S. at 90)).

*Turner* lastly asks whether the inmate "has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal." *Overton*, 539 U.S. at 136 (citing *Turner*, 482 U.S. at 90–91). Plaintiff's proposed regulation goes far beyond a de minimis cost as it impacts WSCC's financial operation, the institution's security, and the day-to-day operations of the prison yard.

In sum, the *Turner* factors weigh in favor of a finding that AR 810's proscription on anointing oils does not violate the First Amendment. Providing Plaintiff with personal anointing

///

oils from outside vendors presents economic and safety concerns. As such, the Court grants summary judgment on this claim in favor of Defendants.

    2.    RLUIPA

To state a claim under RLUIPA, a prison must show that: (1) he participates in a religious exercise and (2) the prison regulation substantially burdened that exercise. *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). The burden then shifts to the State to provide its regulation is the least restrictive means of furthering a compelling governmental interest. *Id.* As explained above, anointing oils pose a unique security threat to prison institutions. These oils can be used to conceal illicit substances, used in prison tattoos, used to make prison alcohol, and used to prevent cell extractions. Several courts have held that similar restrictions also do violate the RLUIPA. *Riggins v. Clarke*, 403 Fed. App'x. 292, 295 (9th Cir. 2010) (holding the inmate did not demonstrate the lack of oil substantially burdened his religious practice and thus the policy did not violate RLUIPA); *Blake v. Rubenstein*, 2016 WL 5660355, *23 (S.D.W. VA. Apr. 5, 2016); *Curry v. California Dep't of Corrections*, 2012 WL 968079, *6 (N.D. Cal. Mar. 21, 2012). The Court is therefore satisfied that AR 810's restriction on outside oils does not violate RLUIPA, and therefore grants summary judgment in favor of Defendants on this claim.

///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that Motion for Summary Judgment (ECF No. 270) is DENIED.

IT IS FURTHER ORDERED that Motion for Summary Judgment (ECF No. 271) is GRANTED.

IT IS FURTHER ORDERED that Motion to Strike (ECF No. 275) is DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close the case.

IT IS SO ORDERED.

Dated September 7, 2021.

_____
ROBERT C. JONES
United States District Judge